CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

July 20, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Dennis B. Reynolds, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:25-cv-00044 |
| | ) | |
| Donald L. Smith, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On May 14, 2025, Plaintiff Dennis B. Reynolds sued Defendant Donald L. Smith, alleging a series of federal and state law claims against Smith in his individual capacity. Several months later, this court granted in part and denied in part Smith's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. (Dkt. 25.) The court denied the motion to dismiss as to one count, dismissed the remaining counts, and granted Reynolds leave to amend two of the dismissed counts. Reynolds timely filed an amended complaint. This matter is now before the court on Smith's motion to dismiss Reynolds's amended complaint. (Dkt. 32.) For the reasons that follow, the court will grant in part and deny in part the motion to dismiss.

### I.    Background[1]

The underlying facts and procedural history are set out in detail in the court's previous memorandum opinion. (Mem. Op. at 2–15 (Dkt. 25).) Here, the court will only restate such

---

[1] Many facts in this section are taken from Reynolds's amended complaint. (Dkt. 27.) Certain factual allegations come from Reynolds's initial complaint that he expressly incorporates into his amended complaint. (Dkt. 27 at 1 (citing Dkt. 1

background as relevant to the instant motion to dismiss.  The court will also include the new factual allegations contained in the amended complaint.

Starting in November of 2016, Reynolds worked for Augusta County Sheriff's Office ("ACSO").  (Compl. ¶¶ 9–11 (Dkt. 1).)  He was hired by Smith as a deputy sheriff and later promoted to K-9 handler in 2018.  (*Id.* ¶¶ 9, 11.)  During his time at ACSO, Reynolds "maintained an exemplary service record with no significant disciplinary issues prior to the events giving rise to this action."  (*Id.* ¶ 14.)  Over time, Reynolds developed a "close personal and professional relationship" with Smith, and they regularly exchanged text message communications.  (*Id.* ¶¶ 42–47.)  Smith often initiated these non-work-related communications, some of which were sexually suggestive or expressed Smith's personal affection for Reynolds.  (*Id.* ¶¶ 43–51.)  Smith also instructed Reynolds to delete text messages. (*Id.* ¶ 50.)

In December 2021, Reynolds's brother was involved in a single-vehicle crash in Augusta County.  (*Id.* ¶ 18.)  Reynolds called the Emergency Communications Center following the accident and asked them not to contact the Virginia State Police ("VSP") about the incident, explaining that his brother would "handle the accident" the next day.  (*Id.* ¶ 19.) The same day, Reynolds directly contacted Trooper Johnson of the VSP to report the accident. (*Id.* ¶ 20.)  After the police responded to the scene, Reynolds's brother was issued a summons for reckless driving, but the charge was ultimately dismissed.  (*Id.* ¶ 21.)

---

¶¶ 1–116).)  The court accepts all these allegations as true for purposes of resolving the motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

ACSO initiated an internal investigation following the accident, which later triggered a VSP investigation into "whether Plaintiff had improperly interfered with the reporting of his brother's accident" in violation of Virginia law. (*Id.* ¶¶ 22–23.) First Sergeant Roane of ACSO asked Reynolds if he had spoken to the VSP about the incident, to which Reynolds responded that "he was aware of the investigation but had not spoken to anyone at the Virginia State Police," even though he had contacted Trooper Johnson on December 13, 2021. (*Id.* ¶¶ 20, 25–26.) Neither one of Reynolds's complaints includes details about how the investigation ended, but he does note that he "was never charged with any wrongdoing" because of the VSP investigation. (*Id.* ¶ 96.)

ACSO maintained a sick leave policy, consistent with other law enforcement agencies, to accommodate both the physical and mental health issues of its employees. (*Id.* ¶ 65.) Reynolds underwent a biopsy procedure to remove a tumor on his spine on March 22, 2023. (*Id.* ¶¶ 55, 59.) In the weeks leading up to and the day after the surgery, Reynolds spoke with Smith about the nature of the surgery and his ongoing pain. (*Id.* ¶¶ 57–60.) Reynolds had also informed Smith of his mental health conditions in the years prior to the biopsy. (*Id.* ¶ 54.) In May of 2023, Reynolds requested time off for "his physical and mental health needs" pursuant to the policy. (*Id.* ¶ 67.) ACSO denied his request "due to alleged staffing needs." (*Id.*)

On May 5 and 6, Reynolds "used available sick leave to take time off to address his physical pain and mental health needs." (*Id.* ¶ 68.) He called Corporal Jonathan Wells of ACSO to notify him that he was sick. (*Id.*) The following day, May 7, Wells saw Reynolds in his yard speaking with his neighbor. (*Id.* ¶ 69.) Wells asked if Reynolds was coming to work.

(*Id.*)  Reynolds does not include any allegations about his response to Wells's question.  Several weeks later, on May 26, Wells and Sergeant Aaron Will submitted a report alleging that Reynolds had violated ACSO's policy regarding the use of sick leave.  (*Id.* ¶¶ 71–72.)

On June 4, Wells and Will met with Reynolds about the alleged policy violations.  (*Id.* ¶ 76.)  There, Reynolds explained that "he had used sick leave because . . . 'he needed some mental health days' and that some days he 'wasn't alright' (pointing to his head)."  (*Id.* ¶ 77.)  When Wells and Will asked if Reynolds needed time for mental health, he responded that "he didn't want to share additional personal medical information because it was protected by HIPAA."  (*Id.* ¶ 78.)  Wells and Will also presented disciplinary letters to Reynolds during the meeting.  (*Id.* ¶ 80.)  Reynolds refused to sign these letters, which addressed the alleged sick leave violations, because he "believed they were unjustified in light of his genuine mental health needs."  (*Id.*)  Then, "after consultation with Defendant Smith," Reynolds was "immediately" placed on suspension and had to turn in his law enforcement officer badge, firearm and vehicle.  (*Id.* ¶ 81.)

Smith noted to Reynolds the following day, June 5, that him "not signing the write up just made this entire thing worse."  (*Id.* ¶ 82.)  He also texted Reynolds on June 6, saying, "You are not coming back until I tell you."  (*Id.* ¶ 83.)  He also warned Reynolds that he was "in a way worse situation than [he] fail[ed] [sic] to acknowledge and [his] law enforcement days could be over."  (*Id.*)  Reynolds remained on suspension for over a month with no information on the status of any investigation or his return date.  (*Id.* ¶ 85.)

On July 12, 2023, over a month after suspension had begun, Smith texted Reynolds to schedule a meeting for the following day.  (*Id.* ¶ 86.)  Smith issued Reynolds a termination letter on July 13, 2023, stating that his appointment as deputy sheriff for ACSO was "terminated effective immediately," but omitting any mention of specific policy violations.  (*Id.* ¶ 87.)  Smith "was pressuring [Reynolds] to resign rather than challenging his termination, effectively forcing him to choose between resignation and formal termination."  (*Id.* ¶¶ 89–90.)  On July 17, Reynolds submitted his resignation letter, stating that he was "forced to resign [his] position at [ACSO]" and that he "maintain[s] [his] innocence to any allegations."  (*Id.* ¶ 90.)  That same day, Smith submitted a Notification of Eligibility of Decertification to the Virginia Department of Criminal Justice Services ("VDCJS") seeking to have Reynolds decertified as a law enforcement officer.  (*Id.* ¶ 94.)  The Notification cited both the alleged sick leave policy violations and the VSP investigation, and said that "Plaintiff had committed 'an act while in the performance of the officer's duties that compromises an officer's credibility, integrity, honesty or other characteristics that constitute exculpatory or impeachment evidence in a criminal case,' pursuant to" [Virginia Code] § 15.2-1707(B)(vi) []."  (*Id.* ¶ 95.)

Reynolds appealed his decertification.  (*Id.* ¶ 99.)  A hearing was held on January 19, 2024, to review Reynolds's appeal and the accompanying evidence.  (*Id.* ¶ 100.)  The Executive Committee of the Department of Criminal Justice found that: (1) "[t]he decertification was primarily based on a sick leave dispute that did not rise to the level warranting decertification under" the applicable Virginia statute; (2) Reynolds "provided sufficient evidence that he was

experiencing genuine mental health concerns during the period in question"; and (3) the VSP investigation "resulted in no charges against [Reynolds], and no evidence was presented to substantiate its relevance to the decertification." (*Id.* ¶ 101.) Ultimately, the Criminal Justice Services Board concluded that there was good cause to overrule the decertification, and the motion to reinstate Reynolds's certification passed unanimously. (*Id.* ¶¶ 101–02.) Still, ACSO did not rehire Reynolds. (*Id.* ¶ 104.)

"On or about September 4–7, 2023," Reynolds also submitted an inquiry[2] with the Equal Employment Opportunity Commission ("EEOC") reporting that Smith "had engaged in sexual harassment and created a hostile work environment through over 1,102 inappropriate, sexually charged, and unwanted text messages directed at Plaintiff over a period exceeding one year." (Am. Compl. ¶ 20.) On September 11, 2023, Smith asked VSP for assistance in initiating a criminal investigation against Reynolds "related to sick leave usage." (*Id.* ¶ 25.) Specifically, Smith sought "records relating to Plaintiff's requests for time off or sick leave." (*Id.* ¶ 26.) Reynolds also alleges that, upon information and belief, Smith learned about Reynolds's EEOC inquiry before Smith reached out to VSP about the investigation. (*Id.* ¶¶ 24–25.)

At some unspecified time after Reynolds's EEOC complaint, Smith "directed, authorized, and approved the creation and dissemination of '*Brady* letters' to prosecutors and defense counsel that falsely accused Plaintiff of having made a false statement to [VSP]." (*Id.* ¶¶ 27, 35–36.) At least one of these letters was "authored by Lorna E. Port, Deputy

---

[2] Reynolds refers to his September 2023 EEOC filing as both an "inquiry" and a "complaint." (Am. Compl. ¶ 20.)

Commonwealth's Attorney for Augusta County, at Defendant Smith's direction and with his authorization." (*Id.* ¶ 35.)

Reynolds attaches two new documents to his amended complaint, the first of which is Port's *Brady* letter. (*Id.* at 13–14.) On letterhead for the County of Augusta Office of the Commonwealth's Attorney, Port's message states in full:

> Defense Counsel,
>
> Commonwealth witness Deputy D Reynolds, Augusta County Sheriff's Office, is a potential witness in the case against your client. Deputy D Reynolds was reported to have made a false statement to Virginia State Police relating to a crime committed by a member of his family in December of 2021.
>
> Respectfully,
>
> Lorna E. Port
> Deputy Commonwealth's Attorney
> County of Augusta

(*Id.* at 14.)

Nelson County Sheriff's Office ("NCSO") also declined to hire Reynolds "due to the *Brady* letters provided by [ACSO]," despite his favorable references from former colleagues. (*Id.* ¶ 42.) Reynolds applied for employment at NCSO "[o]n a date after May 14, 2024." (*Id.*) The second new document Reynolds attaches to his amended complaint is a "Background Release of Information Waiver" from his application for an NCSO position. (*Id.* at 16.) The waiver appears to be signed by "D. B R" and dated February 20, 2025. The release states the following:

> In connection with this application for employment with the Nelson County Sheriff's Office, I understand that an investigative report may be requested by the Nelson County Sheriff's Office. This report may include information pertaining to my character, education, work history, credit history, motor

- 7 -

vehicle records, and criminal information contained within any previous employer, government agency, Federal, State, or Local.  This information shall include, but not be limited to, verifying any statements made on my application. I hereby authorize all corporations, companies, credit agencies, educational institutions, persons, law enforcement agencies, military services, and former employers to release information they may have about me to the Nelson County Sheriff's Office or its agents, *and do forever release them from any liability or responsibility for doing so to the fullest extent allowed by law from any claims arising from the requested information.*

(*Id.* at 16 (emphasis added).)   In response to Reynolds's application, Major Brad Metje informed Reynolds that he could not hire him due to the *Brady* letters ACSO had provided him.  (*Id.* ¶ 42.)

On or about February 27 or 28, 2025, Captain Jeremiah Timpleton at NCSO met with Smith in Augusta County.  (*Id.* ¶ 43.)  In that meeting, Smith showed Timpleton Reynolds's personnel files, including the *Brady* letter from Port.  (*Id.*)  Reynolds alleges upon information and belief that a few weeks later, on or about March 10, Smith or ACSO "transmitted a *Brady* letter to Nelson County Sheriff's Office containing false statements about [Reynolds's] credibility, integrity, and honesty."  (*Id.* ¶ 44.)

This court granted in part and denied in part Smith's motion to dismiss Reynolds's initial complaint on December 31, 2025.  (Dkts. 25, 26.)  Reynolds filed an amended complaint within the 21 days allotted for leave to amend.  (Dkt. 27.)  Smith moved to dismiss the amended complaint on February 11, 2026.  (Dkt. 32.)  After being granted an extension and motion to amend his response brief, (Dkts. 37, 41), Reynolds filed an amended response brief on March 3, 2026, (Dkt. 39-1).  Smith replied on March 27, 2026.  (Dkt. 45.)

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A complaint survives a Rule 12(b)(6) motion to dismiss when it contains sufficient factual allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To be plausible on its face, the claim must have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).  However, a court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.  "[T]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## III.    Analysis

### A.  Criminal Justice Services Board Hearing Transcript

At the outset, the court addresses whether it can consider new references in Reynolds's opposition brief to a transcript of the January 19 Executive Committee of the Criminal Justice

Services Board ("CJSB") hearing on Reynolds's decertification appeal.  (*See* Def.'s Reply at 1–3 (Dkt. 45).)  Ordinarily, when resolving a Rule 12(b)(6) motion to dismiss, a court may only consider the facts alleged in the complaint, any documents attached to the complaint as exhibits, and any documents expressly incorporated in the complaint by reference.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).  A document may also be considered if (1) the document is "integral to the complaint" and (2) "there is no dispute about the document's authenticity."  *Id.* at 166.  Otherwise, the court's reliance on extrinsic materials can improperly convert the motion to dismiss into one for summary judgment.  *See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).  Under "narrow circumstances," the court may also take judicial notice of documents in the public record, including court documents, so long as their authenticity is not in dispute.  *Id.*; *see Massey v. Ojaniit*, 759 F.3d 343, 347–48 (4th Cir. 2014).

First, the January 19 hearing transcript is not attached to the complaint as an exhibit, nor is it expressly incorporated by reference.  While Reynolds discusses the January 19 hearing in his amended complaint, he does not refer to or rely upon the transcript or the factual details therein, included for the first time in his opposition brief.  The transcript does not appear to be integral to the amended complaint.  *See Goines*, 822 F.3d at 166 (expressing doubt that an extrinsic report was integral where "the complaint included a few quotes from and references to" the report); *id.* (noting that "a document is 'integral to the complaint' 'where the complaint relies heavily upon its terms and effect'" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).  And even if it were, it is subject to authenticity challenges from Smith,

(*see* Def.'s Reply at 2), such that there remains a "dispute about the document's authenticity," *Goines*, 822 F.3d at 166.  In fact, a copy of the transcript is not even attached to Reynolds's opposition brief, nor does it appear to be publicly available online.[3]

Nor is it clear that public record exception applies to the transcript.  To take judicial notice of facts from a public record, such facts must "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  But without a copy of the transcript, the court cannot ascertain whether such requirements are met in this case.  *See Lundgren v. Ashton Glenn H.O.A.*, No. 4:24-cv-04402, 2025 WL 1852348, at *4 (D.S.C. Apr. 3, 2025), *report and recommendation adopted*, 2025 WL 1554424 (D.S.C. June 2, 2025) ("Because the undersigned has no way to verify that what is in the transcript accurately reflects what occurred at the hearing . . . the undersigned will not consider the hearing transcript in considering the merits of the Motion to Dismiss."); *Younger v. City of Lynchburg*, 795 F. Supp. 3d 775, 783 n.2 (W.D. Va. 2025) (holding that the court cannot take judicial notice of "criminal complaint" and "protective order" records where the court was "unable to locate the records after reasonably diligent inquiry").

Reynolds also quotes the transcript and provides new details about the CJSB hearing for the first time in his response brief.  (*See* Pl.'s Am. Resp. at 2–3, 5–6, 10, 13, 16 (Dkt. 39-

---

[3] The only publicly available links that the court could locate regarding a January 19, 2024, CJSB Executive Committee hearing do not provide any information about Reynolds's appeal.  In fact, the "January 19, 2024" entry only gives a "Meeting Agenda" and a "Minutes" document dated "January 18, 2024."  Executive Committee Meetings, Va. Dep't of Crim. Just. Servs., https://www.dcjs.virginia.gov/about-dcjs/boards-committees/criminal-justice-services-board/executive-committee/minutes.

1).)  Smith argues that Reynolds's attempt to introduce new details through transcript quotes is an impermissible attempt to amend his complaint through briefing.  The court agrees.  *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (stating that it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss" (citation omitted)); *Hollensteiner v. Waterfield Grp.*, 793 F. Supp. 2d 730, 733, 736 (D. Md. 2010) (finding that, where plaintiff's "opposition memorandum raises several new facts that are neither included in the Complaint nor in any exhibit," the plaintiff "must amend the Complaint to include the facts previously promised, or potentially risk dismissal").

Accordingly, the court will not consider the transcript quotes and new factual allegations from the hearing contained in Reynolds's response brief.  (*See* Pl.'s Am. Resp. at 5–6, 10, 13, 16.)  The court will only consider factual allegations contained in, attached to, and otherwise incorporated into the amended complaint in analyzing Smith's motion to dismiss.

### B.  Count II: Fourteenth Amendment Stigma-Plus Claim

In his amended complaint, Reynolds realleges his stigma-plus claim under the Fourteenth Amendment.  (Am. Compl. at 1–3.)  His allegations are substantially the same as in his original complaint, with an added mention of "decertification materials" that ACSO provided to NCSO.  (*Id.* ¶ 14.)  Smith asserts, "[f]or preservation purposes," that Count II should be dismissed because Reynolds fails to state a stigma-plus claim.  (Def.'s Br. at 9 (Dkt.

33).)  Smith reincorporates his previous motion to dismiss, memorandum in support, and reply in support.  (*Id.* (citing Dkts. 8, 9, 16).)

For the same reasons provided in the court's previous opinion, (*see* Mem. Op. at 23–31), the court will deny Smith's motion to dismiss as to the stigma-plus claim based on the VDCJS "Notification of Eligibility for Decertification" ("VDCJS Notification") made "[o]n July 17, 2023, the same day Reynolds was forced to resign."[4]  (Am. Compl. ¶ 4.)

## C.  Count VIII: Defamation Claim

In Count VIII, Reynolds realleges that Smith is liable for defamation *per se*.  He claims that Smith "directed and authorized the creation and dissemination of *Brady* letters containing false and defamatory statements about Plaintiff," and that Deputy Commonwealth's Attorney Port authored a letter under Smith's direction.  (Am. Compl. ¶¶ 35–36.)  This time, he specifies that the defamation claim is based on several disclosures or "republication[s]" of the *Brady* letter to NCSO: (1) Smith's presentation of Reynolds's personnel files, which included the *Brady* letter, in an in-person meeting with Captain Timpleton of NCSO, (*id.* ¶ 43); and (2) "[u]pon information and belief," Smith's March 10 transmission of "a *Brady* letter" to NCSO "containing false statements about [Reynolds's] credibility, integrity, and honesty," (*id.* ¶ 44).

Smith challenges the defamation claim on several grounds, including that Reynolds does not adequately allege falsity.  The court agrees that, according to Reynolds's own factual

---

[4] Reynolds clarifies in his response brief that "[p]aragraph 14 of the Amended Complaint does not reassert a *Brady*-letter-based stigma-plus theory."  (Pl.'s Am. Resp. at 6.)  Thus, to the extent that Smith moves to dismiss a stigma-plus claim based on Smith's alleged republication of the *Brady* letter, (Def.'s Br. at 6), Reynolds does not allege such a claim.  As Reynolds clarifies, "[t]he stigma-plus claim remains predicated on the VDCJS Notification" sent on July 17, 2023.  (Pl.'s Am. Resp. at 6.)  Both parties agree that the *Brady* letters do not form the basis of a separate stigma-plus claim.

allegations, his amended complaint fails to plausibly allege that the letter contained false statements.  Additionally, Reynolds did not adequately allege malice.

    1.  <u>Falsity</u>

To state a claim for defamation under Virginia state law, a plaintiff must allege "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015) (quoting *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013)). To be actionable, a statement must be "a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Icenhour v. Town of Abingdon*, No. 1:19-cv-00033, 2020 WL 534055, at *4 (W.D. Va. Feb. 3, 2020) (quoting *Lewis v. Kei*, 708 S.E.2d 884, 891 (Va. 2011)).  "[A] statement that is damaging to one's reputation cannot be defamatory if it is not false." *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 923 (E.D. Va. 2004); *see Massey v. Jones*, 28 S.E.2d 623, 627 (Va. 1944).  In other words, truth is an absolute defense to a claim of defamation. *See Cominelli v. Rector & Visitors of The Univ. of Va.*, 589 F. Supp. 2d 706, 714 (W.D. Va. 2008), *aff'd*, 362 F. App'x 359 (4th Cir. 2010).

For his defamation claim, Reynolds asserts that the *Brady* letter, authored by Port and later republished by Smith, contained the following "false and defamatory statement of fact": "Deputy D Reynolds was reported to have made a false statement to Virginia State Police relating to a crime committed by a member of his family in December of 2021."  (Am. Compl. ¶¶ 35–39.)  Reynolds specifically challenges the assertion that he "was reported to have made a false statement to Virginia State Police" as false.  (*Id.* ¶¶ 39–40.)  He implies that results of the January 19 hearing show the assertion's falsity because the Committee decided that:

"a. The decertification was primarily based on a sick leave dispute that did not rise to the level warranting decertification;

b. Plaintiff provided sufficient evidence that he was experiencing genuine mental health concerns during the period in question; and

c. Good cause existed to overrule the decertification, resulting in unanimous reinstatement of Plaintiff's law enforcement certification."

(*Id.* ¶ 40.)  None of these Committee conclusions even directly address the VSP investigation, much less contradict the fact that Reynolds was, at one point, *reported* to have made a false statement to VSP.  Nor does the fact that his certification was reinstated, or that the VSP investigation did not result in charges, disprove the mere existence of a prior false statement report.

In fact, Reynolds's own allegations convey that several investigations were underway into the contradictory statements he had made to VSP—supporting the conclusion that *some* report was made at some point.[5]  (*See* Compl. ¶¶ 22–36 (describing the initiation of an ACSO internal investigation, the process of VSP formal investigation and interviews, the execution of a search warrant for Reynolds's phone, and the special prosecutor's ultimate decision not to prosecute Reynolds for wrongdoing).)  Reynolds does not allege that there was *never* any report that he made a false statement to VSP.  And Reynolds's conclusory allegations that the statement in the *Brady* letter was "false and defamatory" do not suffice to plausibly allege that there was a false factual statement.  *See Cominelli*, 589 F. Supp. 2d at 714–15.  Instead, the facts set forth in the complaints support the opposite conclusion—that Reynolds *was* reported to

---

[5] These allegations were made in Reynolds's initial complaint, but he explicitly incorporated them into his amended complaint.  (*See* Am. Compl. at 1, 7.)

- 15 -

have made a false statement to Virginia State Police, exactly as Port's *Brady* letter read.  Because Reynolds did not sufficiently allege facts giving rise to a plausible defamation claim, the claim will be dismissed.

Reynolds's factual support for his defamation claim is especially deficient regarding the March 10 *Brady* letter.  Reynolds alleges "[u]pon information and belief" that either Smith *or* ACSO transmitted a *Brady* letter to NCSO on March 10, 2025, "containing false statements about [Reynolds's] credibility, integrity, and honesty."  (Am. Compl. ¶ 44.)  "Under the pleading standard the Supreme Court articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'"  *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009)).  Although plaintiffs may generally plead facts based "upon information and belief" where the plaintiff "is in a position of uncertainty because the necessary evidence is controlled by the defendant," this exception still requires the plaintiff to provide factual anchors.  *Drzymala v. BAE Sys. Controls, Inc.*, No. 7:21-cv-00522, 2022 WL 3971050, at *3 (W.D. Va. Aug. 31, 2022) (cleaned up).  Here, Reynolds lacks such anchors.  Reynolds relies purely on speculation and does not have "sufficient data to justify his allegation that" Smith even sent a *Brady* letter to NCSO about Reynolds.  *Van Buren*, 611 F. Supp. 3d at 37.  Moreover, Reynolds leans on the conclusory allegation that this letter "contain[ed] false statements about [his] credibility, integrity, and honesty."  (Am. Compl. ¶ 44); *see Kashdan v. George Mason Univ.*, 70 F.4th 694,

- 16 -

702 (4th Cir. 2023) (affirming dismissal of a claim where the complaint was "devoid of facts supporting the allegations that were pleaded upon information and belief" (cleaned up)).

In sum, Reynolds's factual allegations do not support a plausible inference that the *Brady* letters published to NCSO or Captain Timpleton contained a false factual statement. Accordingly, Count VIII will be dismissed in full.

### D. Count III: First Amendment Retaliation Claim

Reynolds asserts that Smith deprived him of his First Amendment rights by retaliating against him after he made an EEOC filing.  (Am. Compl. ¶¶ 17–31.)  Generally, to prevail on a claim of First Amendment retaliation, the plaintiff must show "(i) that [he] engaged in speech on a matter of public concern, (ii) that the retaliatory action deprived [him] of some valuable benefit, and (iii) that there is a causal connection between the protected action and the [retaliation], which would not have occurred 'but for' the protected expression." *Echtenkamp v. Loudon Cnty. Pub. Schs.*, 263 F. Supp. 2d 1043, 1057 (E.D. Va. 2003).

1. Adverse Action

Not all adverse actions taken by an employer give rise to liability under a First Amendment retaliation claim.  The defendant's retaliatory action must be "more than a de minimis inconvenience to the exercise of the plaintiff's rights." *Williams v. Mitchell*, 122 F.4th 85, 89 (4th Cir. 2024).  Courts look to whether the employer's actions would "tend to chill individuals' exercise of constitutional rights" under the First Amendment, *ACLU of Md. v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993), or "deter 'a person of ordinary firmness' from exercise in the future," *Williams*, 122 F.4th at 89.  Generally, this requirement is "similar"

to the "adverse [employment] action" element in the Title VII context.  *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 697 n.12 (4th Cir. 2018).  That said, "something less onerous than an 'adverse employment action' in the context of Title VII jurisprudence may so chill the exercise of constitutional rights as to constitute a showing of adversity in a First Amendment retaliation case under § 1983."  *Saleh v. Upadhyay*, 11 F. App'x 241, 255 (4th Cir. 2001) (unpublished per curiam decision).

Here, Reynolds alleges that the "adverse actions" following his EEOC complaint and giving rise to his retaliation claim are: (1) Smith's outreach on September 11, 2023, seeking VSP assistance in initiating a criminal investigation into Reynolds's sick leave usage; and (2) Smith's dissemination of *Brady* letters to prosecutors and defense counsel "[i]n further retaliation for Plaintiff's EEOC complaint."  (Am. Compl. ¶¶ 25–28.)  Both alleged adverse actions occurred after Reynolds's July 2023 termination and after his EEOC complaint filing "[o]n or about September 4–7, 2023."  (*Id.* ¶ 20; *see id.* ¶¶ 8, 25–28, 29.)

As for the first alleged adverse action, the Fourth Circuit has not yet decided whether a retaliatory investigation can count as an adverse action giving rise to a First Amendment claim.  *See Roncales v. Cnty. of Henrico*, 451 F. Supp. 3d 480, 498 n.13 (E.D. Va. 2020) ("It appears that the Fourth Circuit has not determined whether an investigation, standing alone, can give rise to a First Amendment retaliation claim.").  In an unpublished opinion, the Fourth Circuit found that defendant's filing of an investigative report about plaintiff with a prosecutor's office did not suffice to show adverse action for a First Amendment retaliation claim, as "[t]he only impact demonstrated [was plaintiff's] fear that [defendant's] report might someday result in a

prosecution."[6] *Edens v. Kennedy*, 112 F. App'x 870, 881 (4th Cir. 2004) (unpublished per curiam decision).  Similarly, in the instant case, Reynolds did not allege that the VSP investigation initiated by Smith in September 2023 resulted in any criminal charges or other harm to Reynolds.  Despite the lack of precedent from the Court of Appeals, federal district courts in this circuit have repeatedly concluded that "a retaliatory investigation does not form the basis of a constitutional claim."  *Trueman v. United States*, No. 7:12-cv-00073, 2015 WL 1456134, at *13 (E.D.N.C. Mar. 30, 2015), *aff'd*, 615 F. App'x 122 (4th Cir. 2015) (collecting cases); *see also Dawson v. Rumsfeld*, No. 1:05-cv-01270, 2006 WL 325867, at *6 (E.D. Va. Feb. 8, 2006) (inferring from Fourth Circuit case law that "the mere decision to initiate an investigation is not an adverse employment action" in the Title VII context).

In a recent Eastern District of Virginia case, the court allowed a First Amendment retaliation claim to survive a motion to dismiss where the plaintiff alleged a retaliatory investigation as the "adverse action."  *See Roncales*, 451 F. Supp. 3d at 498.  But there, the plaintiff was terminated "immediately after the investigation," and the court relied on this fact to conclude that she stated a First Amendment retaliation claim.  *Id.*  Reynolds's case is distinguishable, as his termination occurred months *before* Smith's September 2023 outreach to VSP and initiation of the criminal investigation.  (*See* Am. Compl. ¶¶ 25–26.)  Unlike in *Roncales*, Reynolds's termination cannot be considered part of the adverse action for purposes

---

[6] Reynolds argues that *Edens* involves "an internal filing within the same agency."  (Pl.'s Am. Resp. at 10–11.)  It appears that Reynolds is mistaken.  *Edens* involves a dispute between an individual plaintiff and a West Virginia State Trooper defendant, in which the plaintiff alleged that the officer defendant violated his First Amendment rights by filing an investigative report with the local prosecutor's office about the plaintiff.  *Edens v. Kennedy*, 112 F. App'x 870, 880–81 (4th Cir. 2004) (unpublished per curiam decision).

of his retaliation claim, as his EEOC filing could not have caused his termination. *See Smith v. Sec'y of the Army*, No. 1:11-cv-00724, 2012 WL 3866487, at *4 (E.D. Va. Sept. 5, 2012) ("[O]ne cannot retaliate against an employee for engaging in protected activity until the employee actually engages in the protected activity."); *Huang v. Bd. of Governors of The Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) (requiring a plaintiff to "show that 'but for' the protected expression the employer would not have taken the alleged retaliatory action.").

Smith asserts qualified immunity in response to Reynolds's First Amendment retaliation claim. (*See* Def.'s Br. at 14.) Officers are entitled to qualified immunity under § 1983 if the unlawfulness of their conduct was not "clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Insofar as Reynolds alleges that Smith communicating with VSP to initiate criminal investigation is an "adverse action" giving rise to a First Amendment retaliation claim, the unlawfulness of Smith's conduct was not clearly established. To be clearly established, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). Reynolds has not identified—and the court has not found—U.S. Supreme Court, Fourth Circuit, or Virginia Supreme Court precedent holding that initiating a criminal investigation, without more, constitutes an adverse action that would chill the investigation subject's First Amendment rights. Thus, it would not be "clear to a reasonable officer that [this] conduct was unlawful in the situation [Smith] confronted." *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011) (en banc) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Smith is afforded qualified immunity as to the alleged initiation

of a retaliatory criminal investigation.  The First Amendment retaliation claim will be dismissed insofar as it is based on Smith's outreach to VSP and initiation of a criminal investigation.

2.  Causation – *Brady* Letters

The remaining portion of Reynolds's retaliation claim asserts that Smith "directed, authorized, and approved the creation and dissemination of '*Brady* letters' to prosecutors and defense counsel that falsely accused Plaintiff of having made a false statement to Virginia State Police" in retaliation for Reynolds's filing his EEOC complaint.  (Am. Compl. ¶ 27.)

For the causation element of a First Amendment retaliation claim, a plaintiff must show, at minimum, "that the defendant was aware of [plaintiff's] engaging in protected activity," and "some degree of temporal proximity."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).  Here, Reynolds alleges that, "[u]pon information and belief, Defendant Smith knew or should have known of" Reynolds's alleged protected activity—his "EEOC inquiry and subsequent participation in the EEOC investigation."  (Am. Compl. ¶ 24.)  Reynolds specifies that around September 8, 2023, within several days of Reynolds filing his EEOC complaint, (Am. Compl. ¶ 20), "Defendant Smith received an intake questionnaire from the EEOC regarding [Reynolds's] inquiry, placing Defendant Smith on actual notice of [Reynolds's] protected activity," (*id.* ¶ 24).[7]  Reynolds then repeats that, "[u]pon information and belief, Defendant Smith, as the named respondent

---

[7] It is unclear whether Reynolds alleges this entire paragraph, including the date of receipt of the EEOC inquiry, "upon information and belief."  (Am. Compl. ¶ 24.)  The court assumes that, given Reynolds's following paragraph and use of "upon information and belief" phrasing about Smith's received notice of the filing, (*id.* ¶ 25), the entire paragraph is alleged "upon information and belief," (*id.* ¶ 24).

- 21 -

in Plaintiff's EEOC complaint, received notice of the filing on or before September 11, 2023."
(*Id.* ¶ 25.)

Given the speculative nature of an allegation made "upon information and belief," these statements alone are generally insufficient to survive a motion to dismiss. *See Harman v. Unisys Corp.*, 356 F. App'x 638, 640–41 (4th Cir. 2009) (unpublished) (explaining that "conclusory allegations" which simply "assume [a particular fact entitling the plaintiff to relief] 'upon information and belief'" are "insufficient to defeat a motion to dismiss"). However, "the *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Mystic Retreat Med Spa & Weight Loss Ctr. v. Ascentium Cap. LLC*, 615 F. Supp. 3d 379, 384–85 (M.D.N.C. 2022) (cleaned up).  The exact date by which Smith was notified of Reynolds's EEOC complaint could be peculiarly within Smith's control.

But even if these allegations are peculiarly within the control of Smith and suffice to state the knowledge element, the only remaining portion of Reynolds's retaliation claim—based on the *Brady* letters distributed after Reynolds's EEOC filing—does not adequately allege "some degree of temporal proximity" or other facts sufficient to suggest causation. *Constantine*, 411 F.3d at 501.  First, Reynolds does not specify when the post-certification-hearing *Brady* letter dissemination began.  At the earliest, it occurred at some point after January 19, 2024, which is over four months after his alleged protected activity of filing an EEOC inquiry.  Second, the only specific dates Reynolds provides for Smith's *Brady* letter

dissemination following the hearing are February 27–28, 2025, and March 10, 2025, (Am. Compl. ¶¶ 43–44)—each distribution occurring over a year after Reynolds's protected activity. This year-long gap cuts against a plausible inference of retaliation and causation. *See Hart v. Hanover Cnty. Sch. Bd.*, No. 3:10-cv-00794, 2011 WL 652524, at *3 (E.D. Va. Feb. 11, 2011), *aff'd*, 495 F. App'x 314 (4th Cir. 2012) (holding that a 17-month lapse is too long and not enough to survive a motion to dismiss); *cf. Constantine*, 411 F. 3d at 501 (finding a four-month span was sufficiently proximate).

Further, as Smith argues, Virginia law requires former employers to disclose allegations of misconduct. (*See* Def.'s Br. at 17 (citing Va. Code Ann. § 15.2-1705(B); Va. Code Ann. § 15.2-1709).) Reynolds applied for a position at NCSO and signed a form authorizing the release of information stored by his former employer, ACSO. (Am. Compl. ¶¶ 42–44; *id.* at 16.) Thus, his own allegations support a non-retaliatory reason—indeed, a statutory duty— for Smith's disclosure of his personnel file, including the *Brady* letter, on the two dates specified in the amended complaint.

The court concludes that Reynolds does not allege sufficient facts to plausibly show that his EEOC complaint caused Smith's dissemination of *Brady* letters, including after the January 19, 2024, certification hearing. Accordingly, the second portion of Reynolds's First Amendment retaliation claim will also be dismissed. Reynolds fails to state a First Amendment retaliation claim upon which relief can be granted, and Count III will be dismissed in full.

## IV.    Conclusion

For the foregoing reasons, the court will grant in part and deny in part Smith's motion to dismiss.  (Dkt. 32.)  The court will dismiss Counts III and VIII of the amended complaint without prejudice.  As the court stated in its earlier memorandum opinion, Reynolds's Count II stigma-plus claim based on the VDCJS Notification may proceed.

An appropriate Order will issue.

**ENTERED** this _20th_ day of July, 2026.

 

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE