**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

**DENNIS B. REYNOLDS,**

*Plaintiff,*

v. **Case No. 5:25-cv-44**

**DONALD L. SMITH,**

*Defendant*

**SECOND AMENDED COMPLAINT**
**(Counts II, III, and VIII)**

NOW COMES the Plaintiff, Dennis Blake Reynolds, by and through counsel, and for his Second Amended Complaint against Defendant Donald L. Smith, in his individual capacity, states as follows. This Second Amended Complaint supersedes the First Amended Complaint and constitutes the sole operative pleading, except that the factual allegations previously set forth in the initial Complaint, Dkt. No. 1, ¶¶ 1–116, are incorporated by reference as though fully restated. To the extent of any inconsistency between the incorporated allegations and this Second Amended Complaint, this pleading controls. Counts II, III, and VIII are restated and repleaded to conform to the Court's rulings of December 31, 2025 and July 20, 2026 and to avoid waiver. *See Young v. City of Mount Ranier*, 238 F.3d 567 (4th Cir. 2001).

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Dennis Blake Reynolds is a citizen of Virginia and a former deputy sheriff of the Augusta County Sheriff's Office ("ACSO"), where he served from November 2016 until July 17, 2023.

2. Defendant Donald L. Smith is the Sheriff of Augusta County, Virginia, and is sued in his individual capacity for acts taken under color of state law.

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the claims arising under 42 U.S.C. § 1983, and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the

related state-law defamation claim. Venue lies in this district and division under 28 U.S.C. § 1391(b).

## ADDITIONAL FACTUAL ALLEGATIONS

4. Plaintiff himself reported his brother's single-vehicle accident of December 13, 2021, calling Augusta County ECC at approximately 12:30 a.m. that night (ECC Event Report No. 2021-109869) and contacting the Virginia State Police directly the following morning when the damage proved greater than first believed. Virginia law required neither report, because the accident involved no injury or death. *See* Va. Code Ann. § 46.2-371.

5. The Virginia State Police never interviewed Plaintiff during the investigation that followed. A special prosecutor declined prosecution, and the investigation closed in January 2023 with no charges. Plaintiff's brother was found not guilty of the underlying traffic charge.

6. ACSO's own internal-affairs investigation of the accident complaint, opened January 12, 2022 and completed February 3, 2022, found the complaint unfounded. As Major Jenkins of the ACSO later testified at Plaintiff's decertification hearing, "We found nothing that would indicate that Reynolds did anything wrong," and the Sheriff's Office was never notified of, consulted about, or provided any documents concerning any Brady letter, learning of one only in 2023 when the leave dispute began. (Pl.'s Answer to Interrog. No. 16; DCJS Hearing Tr. 40–41, Ex. C.)

7. An undated letter authored by Deputy Commonwealth's Attorney Lorna E. Port, stating that Plaintiff "was reported to have made a false statement to Virginia State Police relating to a crime committed by a member of his family in December of 2021" (the "Brady letter"), was placed in circulation without notice to Plaintiff. No one from the Commonwealth's Attorney's Office or the Sheriff's Office ever told Plaintiff the letter existed, explained its basis, identified any false statement, or gave him any opportunity to contest it. The letter bears no date on its face, and it was noted to be undated on the record of Plaintiff's later decertification hearing. (Am. Compl. Ex. A; Pl.'s Answer to Interrog. No. 16; DCJS Hearing Tr. 29, Ex. C.)

8. Plaintiff first learned of the Brady letter by chance on May 30, 2023, when he saw it on the cover sheet of a case file at the Augusta County General District Court, where he had appeared to testify for the Commonwealth. That discovery came four days after the May 26, 2023 write-ups and months after the investigation had closed without charges.

9. A Brady letter is effectively career-ending for a law-enforcement officer. It must be disclosed to the defense in every case in which the officer may testify, prosecutors cannot rely on the officer's testimony, and the officer can no longer perform an essential function of the job.

10. On June 6, 2023, when Plaintiff asked by text message whether he should plan on returning to work, the Defendant responded "You are not coming back until I tell you," "You not signing the write up just made this entire thing worse," and "You're in a way worse situation than you fail to acknowledge and your law enforcement days could be over."

11. On July 13, 2023, the Defendant presented Plaintiff a termination letter stating that his appointment "is terminated effective immediately," giving no reason. The Defendant then required Plaintiff to submit a resignation letter, which Plaintiff did on July 17, 2023. That same day, the Defendant submitted to the Virginia Department of Criminal Justice Services ("DCJS") a DC-1 Notification of Eligibility for Decertification invoking the Brady letter, and the Notification was transmitted to DCJS by email on July 19, 2023.

12. The Notification stated that Plaintiff had "resigned," while the Defendant simultaneously wrote the Virginia State Police that Plaintiff "was terminated."

13. The Defendant gave Plaintiff no notice of the stigmatizing charges in the Notification and no opportunity to refute them before their publication to DCJS and the Criminal Justice Services Board ("CJSB"), where they became available to Virginia criminal-justice agencies and, upon routine background inquiry, to prospective law-enforcement employers.

14. On August 1, 2023, Plaintiff went to the Sheriff's Office to request a copy of his personnel file and, upon information and belief, was assaulted in the lobby and magistrate hallway, an incident captured by security-camera footage in the possession of the Augusta County Sheriff's Office and/or Augusta County. On August 3, 2023, the personnel file transmitted to Plaintiff by

email contained no Brady letter. The Brady letter, and later a second, would nonetheless appear in the personnel file the Defendant later showed the Nelson County Sheriff's Office. (Pl.'s Answer to Interrog. No. 4; Pl.'s Rule 26(a)(1) Disclosures 1, 5, Dkt. No. 34.)

15. Plaintiff submitted an inquiry to the EEOC on September 4, 2023 (Inquiry No. 438-2023-02227) reporting the Defendant's years of unwanted, sexually charged text messages, his 2022 order that Plaintiff delete their messages, and the retaliation that followed Plaintiff's rejection of him. Upon information and belief, the EEOC transmitted notice to the Defendant, as the named respondent, on or about September 8, 2023.

16. Seven days after Plaintiff's EEOC inquiry, on September 11, 2023, the Defendant personally requested Virginia State Police assistance with a criminal investigation of Plaintiff concerning claimed time and sick leave. The sworn October 2, 2025 affidavit of VSP Special Agent Stephen J. Nicely, Jr., recites that "On September 11, 2023, Donald Smith, Sheriff of Augusta County, Virginia, requested Virginia State Police assistance with an investigation related to Dennis Blake REYNOLDS, when he reportedly claimed time which he did not work," and that "Sheriff Smith is cooperating with the investigation." Search warrants have issued in that investigation as recently as October 2025, during the pendency of this action. (Pl.'s Answers to Interrogs. Nos. 11–12.)

17. On January 19, 2024, after a full hearing, the CJSB unanimously reinstated Plaintiff's law-enforcement certification, finding that the decertification was primarily based on a sick-leave dispute that did not rise to the level warranting decertification, that Plaintiff presented sufficient evidence of genuine mental-health concerns, and that no evidence of other misconduct was presented. (Pl.'s Answer to Interrog. No. 17; Dkt. Nos. 6-5, 9-2.)

18. Notwithstanding that unanimous exoneration, the Defendant continued to disseminate the discredited accusations. Plaintiff applied to the Nelson County Sheriff's Office ("NCSO") in approximately February 2025 and signed a Background Release of Information Waiver on February 20, 2025. On or about February 27–28, 2025, Capt. Jeremiah Timpleton of the NCSO traveled to Augusta County as part of Plaintiff's pre-employment background investigation,

and the Defendant personally showed and hand-delivered to Capt. Timpleton Plaintiff's personnel file, including the Brady letter. (Pl.'s Answers to Interrogs. Nos. 13–14.)

19. Upon information and belief, on or about March 10, 2025, the Defendant or the ACSO at his direction also transmitted a Brady letter to the NCSO. (Pl.'s Answers to Interrogs. Nos. 13, 15.)

20. On March 10, 2025, at approximately 4:01 p.m., Chief Brad Metje of the NCSO telephoned Plaintiff, a call Plaintiff memorialized in a contemporaneous note. Chief Metje told Plaintiff that Nelson County wanted to hire him but could not because of the Brady letters placed in his personnel file; that there were two such letters, one concerning his brother's accident and one concerning the sick-leave allegation, although Plaintiff has only ever been given one; that Augusta County Commonwealth's Attorney Tim Martin had stated that he did not "do" Brady letters; and that the Defendant and Mr. Martin "did not have very nice things to say" about Plaintiff, notwithstanding the favorable references Plaintiff had received, including from Mark Carroll and Connor Tobin. (Pl.'s Answers to Interrogs. Nos. 12–13.)

21. Plaintiff has never been given, and has never seen, the second Brady letter concerning the sick-leave allegation, and no rescission of either letter has ever been communicated to him. (Pl.'s Answer to Interrog. No. 23.)

22. After his compelled resignation, Plaintiff applied for law-enforcement positions with substantially every local agency, including Grottoes, Waynesboro, Wintergreen, Bridgewater, Dayton, Nelson County, Elkton, and Staunton. He received no law-enforcement offer he could accept. Upon information and belief, Wintergreen canceled a scheduled interview after being contacted by the Defendant. Plaintiff, once required to raise approximately $20,000 to keep his canine partner when other handlers had been given theirs, now works outside law enforcement entirely.

23. Upon information and belief, the Defendant made statements to Ray Eppard concerning his investigation of Plaintiff and required Mr. Eppard to sign a non-disclosure agreement concerning them, and, while Brady-related issues arose as to other officers, neither the

Defendant nor the Commonwealth's Attorney took comparable action against them. (Pl.'s Answer to Interrog. No. 2.)

24. The Defendant's conduct toward Plaintiff was driven by personal spite and ill will. For years the Defendant sent Plaintiff personal, sexually charged text messages professing that he loved Plaintiff and missed him. After Plaintiff entered a relationship and distanced himself, the Defendant's messages turned possessive, jealous, and hostile, telling Plaintiff to "stay single," accusing him of having "traded me in," and, on February 21, 2023, texting "you ain't talking again you prick." The discipline, the Brady letter's surfacing, the Notification, and the post-exoneration disseminations each followed Plaintiff's rejection of and distancing from the Defendant and his protected complaints about that conduct.

**COUNT II**
Deprivation of Liberty Interest Without Due Process of Law
42 U.S.C. § 1983 (Fourteenth Amendment)

25. Plaintiff incorporates the foregoing paragraphs and the factual allegations of the initial Complaint as though fully restated.

26. Acting under color of state law, the Defendant made and published stigmatizing charges about Plaintiff in conjunction with the termination of his employment, including the July 17, 2023 DC-1 Notification stating that Plaintiff committed "an act while in the performance of the officer's duties that compromises an officer's credibility, integrity, honesty, or other characteristics that constitute exculpatory or impeachment evidence in a criminal case." (DC-1 Notification, Dkt. No. 6-6.)

27. Those charges were false. Plaintiff committed no such act. He was off duty, he himself reported the accident, Virginia law required no report at all, the VSP never interviewed him, no charge was ever brought, ACSO's own investigation found the complaint unfounded, and the CJSB unanimously so concluded after a full hearing. The Notification's statement that Plaintiff "resigned" was likewise false by the Defendant's own simultaneous account to the VSP that Plaintiff "was terminated."

28. The Defendant published the charges to DCJS and the CJSB, where they became available to Virginia criminal-justice agencies and prospective law-enforcement employers. Those charges, together with the Brady letters the Defendant continued to disseminate, foreclosed Plaintiff from the range of employment opportunities for which his certification qualified him, as his applications to eight agencies and the NCSO's stated inability to hire him confirm.

29. The Defendant afforded Plaintiff no notice of the stigmatizing charges, no opportunity to be heard before or after their publication, and no name-clearing process of any kind.

30. As a direct and proximate result, Plaintiff suffered the deprivation of his liberty interest in his good name, reputation, and chosen profession, together with lost income and benefits, reputational injury, and emotional distress. The Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's constitutional rights, warranting punitive damages.

**COUNT III**
Retaliation for Protected Activity
42 U.S.C. § 1983 (First Amendment)

31. Plaintiff incorporates the foregoing paragraphs as though fully restated.

32. Plaintiff's September 4, 2023 EEOC inquiry, and this action itself, are protected activity. The adverse actions on which this Count rests lie on the employment track. Acting as Plaintiff's former public employer, the Defendant interfered with the hiring decisions of other law-enforcement agencies concerning his former deputy, by personally delivering the personnel file and Brady letters to the NCSO's background investigator, transmitting a Brady letter to that office, orally disparaging Plaintiff, and, upon information and belief, contacting Wintergreen. That interference cost Plaintiff the Nelson County position and other opportunities and would deter a person of ordinary firmness from exercising his rights.

33. The Defendant knew of the protected activity, as the seven-day sequence between the September 4, 2023 EEOC inquiry and his September 11, 2023 request recited in the Nicely affidavit reflects. His retaliatory course ran continuously from that request through the warrants executed in October 2025, and he acted at his first opportunity to reach a prospective employer,

within days of the first post-exoneration background inquiry concerning Plaintiff. But for Plaintiff's protected activity, the Defendant would not have taken these actions.

34. In the alternative, the Defendant's disclosures of damaging private personnel information about Plaintiff are independently actionable as retaliation.

35. As a direct and proximate result, Plaintiff suffered lost employment opportunities, lost income, reputational injury, and emotional distress, and the conduct was willful and malicious, warranting punitive damages.

**COUNT VIII**
Defamation and Defamation by Implication
(Virginia Common Law)

36. Plaintiff incorporates the foregoing paragraphs as though fully restated.

37. Within the year preceding the First Amended Complaint, the Defendant published and republished of and concerning Plaintiff the false and defamatory matter described above, including (a) on or about February 27–28, 2025, by personally showing and hand-delivering Plaintiff's personnel file, including the Brady letter, to Capt. Timpleton of the NCSO; (b) on or about March 10, 2025, upon information and belief, by transmitting or causing to be transmitted a Brady letter to the NCSO; (c) upon information and belief, by placing or causing to be placed in Plaintiff's personnel file, and communicating to the NCSO, a second purported Brady letter concerning the sick-leave allegation, a letter never provided to Plaintiff; and (d) on or about March 10, 2025, by oral statements disparaging Plaintiff to the NCSO, as Chief Metje relayed to Plaintiff.

38. The published matter charged, expressly and by implication, that Plaintiff is a dishonest law-enforcement officer who made a false statement to the Virginia State Police and remains subject to valid, extant Brady impairment. Those charges were false when republished. The underlying investigation had closed with no charges, the complaint had been found unfounded by ACSO itself, and the CJSB had unanimously reinstated Plaintiff's certification, all of which the Defendant knew. Even where any individual statement was literally true in isolation, the Defendant's presentation and juxtaposition of the materials, offered as current and disqualifying in a 2025 background investigation without disclosure of the exoneration, conveyed the false

implication that Plaintiff is presently dishonest and unemployable in law enforcement, and the Defendant intended or knowingly endorsed that implication.

39. The statements are defamatory per se. They impute unfitness to perform the duties of Plaintiff's profession and prejudice him in that profession.

40. The Defendant acted with actual and common-law malice. He acted from personal spite and ill will arising from Plaintiff's rejection of his advances, as his own messages reflect; he republished the accusations knowing of the unfounded finding and the CJSB's unanimous exoneration; he republished an undated letter whose author's office, as Chief Metje relayed, disclaimed issuing Brady letters at all; upon information and belief, he imposed a non-disclosure agreement on a witness concerning his investigation of Plaintiff while taking no comparable action as to other officers with Brady-related issues; and he acted in retaliation for Plaintiff's protected complaints. Any qualified privilege attending responses to a background investigation, including the statutory immunity of Va. Code Ann. § 15.2-1709, does not protect the Defendant, because the information he disclosed was knowingly false or deliberately misleading, was rendered with malicious purpose, and violated Plaintiff's civil rights.

41. As a direct and proximate result, Plaintiff lost the Nelson County position and other employment opportunities and suffered injury to his reputation, humiliation, and emotional distress. The conduct warrants punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dennis Blake Reynolds respectfully requests that this Court enter judgment in his favor and against Defendant Donald L. Smith and award (a) compensatory damages in the amount of $5,000,000.00, or such amount as may be proven at trial, including lost income and benefits, reputational harm, and emotional distress; (b) punitive damages in the amount of $350,000.00; (c) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; (d) pre-judgment and post-judgment interest as allowed by law; and (e) such other and further relief as the Court deems just and proper.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

_______________/s/______________
Elliott M. Harding, Esq.
Virginia State Bar No. 90442
Counsel for Plaintiff Dennis B. Reynolds
HARDING COUNSEL, PLLC
2805 Meadow Vista Dr.
Charlottesville, Virginia 22901
Telephone: 434-962-8465
Email: Elliott@HardingCounsel.com

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Harrisonburg Division**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Second Amended Complaint was filed this 10th day of August, 2026, and a copy was sent via ECF notice to all opposing counsel.

Respectfully submitted,

_______________/s/______________

Elliott M. Harding, Esq.
Virginia State Bar No. 90442
Counsel for Plaintiff Dennis B. Reynolds
HARDING COUNSEL, PLLC
2805 Meadow Vista Dr.
Charlottesville, Virginia 22901
Telephone: 434-962-8465
Email: Elliott@HardingCounsel.com